1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUMITRU MARTIN, | No. 2:25-cv-00687-DJC-AC |
| Plaintiff, | |
| v. | ORDER |
| ARINDA PHILLIPS, et al., | |
| Defendants. | |

Pending before the Court is Petitioner Dumitru Martin's Motion for Temporary Restraining Order (Mot. TRO (ECF No. 6.)).  Petitioner was released to a halfway house and then to home confinement by the Bureau of Prisons due to having received sufficient Good Conduct Time and First Step Act Earned Time Credits (FSA Credits) while he served his sentence.  (*Id.* at 3–4.)  Several months later, despite having complied with all the terms of his release plan, he was arrested and placed back in custody.  (*See id.* at 4.)  Although he received no written documentation regarding the reason why, it appears this was due to an active immigration detainer against him.  (*Id.*)  Petitioner now seeks release from custody and return to home confinement pending a decision on his Petition for Writ of Habeas Corpus under 18 U.S.C. § 2241.  (ECF No. 1.)  Respondents argue that the Motion should be denied because this Court

1

lacks jurisdiction and statutory authority.  (*See* Martin Opp'n (ECF No. 6) at 1.)  For the reasons discussed below, the Court GRANTS the Motion for Temporary Restraining Order and orders Mr. Martin transferred back into prerelease custody.

## I.    Background

### A.  Statutory Background

This Motion arises in the context of the First Step Act.  The Act was signed into law in December 2018 and amended 18 U.S.C. §§ 3621, 3624, and 3632.  First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018).  These amendments provide that the Bureau of Prisons give prisoners the chance to receive "earned time credits" for participating in "recidivism reduction programs."  *See* 18 U.S.C. §§ 3621(h), 3632(a); *see also Bottinelli v. Salazar,* 929 F.3d 1196, 1197–98 (9th Cir. 2019).  Section 3632 provides that a prisoner may receive earned time credits, explains how the credits are to be applied, and states what disqualifies a prisoner from receiving such credits. Principally at issue in this case is section 3632(d)(4)(C), which reads:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4)(C).

### B.  Factual Background

Petitioner Dumitru Martin brings a Motion for Temporary Restraining Order seeking immediate release from custody and return to home confinement pending a decision on his Petition for Writ of Habeas Corpus under 18 U.S.C. § 2241. Alternatively, he seeks release pending resolution of his Habeas Petition.

In 2017, Petitioner was sentenced to 156 months in prison.  (Mot. TRO at 3.) While in prison, Petitioner completed programming, received no disciplinary write-ups, and paid off his entire financial obligation.  (*Id.*)  As a result, he earned both Good

1    Conduct Time and FSA Credits.  (*Id.*)  In June 2024, the BOP determined that

2    Petitioner had enough credits to be eligible for prerelease custody and transferred

3    him first to a halfway house, and in August 2024, to home confinement.  (*Id.* at 3–4.)

4    Petitioner has resided in Sacramento, California while on home confinement, and has

5    had no disciplinary violations during this period.  (*Id.* at 4.)

6          On February 18, 2025, Petitioner was arrested after reporting as directed and

7    returned to custody at the Sacramento County Jail.  (*Id.*)  Petitioner remains

8    incarcerated.[1]  While Petitioner was not given any written documentation regarding

9    the decision to return him to custody, he was informed that the decision was based on

10   a recent BOP policy that prohibits referrals and transfers to residential reentry centers

11   and home confinement for BOP prisoners with unresolved immigration detainers.  (*Id.*

12   at 4.)  Petitioner has an unresolved immigration detainer.[2]  (*Id.*)  Respondents oppose

13   the instant Motion, arguing primarily that this Court lacks jurisdiction and statutory

14   authority over the matter.[3]

15   **II.      Subject Matter Jurisdiction**

16         Respondents first argue that this Court lacks jurisdiction to hear the underlying

17   habeas petition because where Petitioner serves his time on prerelease custody is not

18   within the "core of habeas."  (Martin Opp'n at 3-4.)  "[T]he essence of habeas corpus is

19   an attack by a person in custody upon the legality of that custody."  *Preiser v.*

20   *Rodriguez,* 411 U.S. 475, 484 (1973).  However, where success on a petitioner's claim

21   "would not necessarily lead to his immediate or earlier release from confinement"

22   then it "does not fall within 'the core of habeas corpus.'"  *Nettles v. Grounds,* 830 F.3d

23   922, 935 (9th Cir. 2016) (citation omitted).  While the federal courts do not have

---

[1] In Petitioner's Reply, Petitioner's counsel informed the Court that Petitioner was recently transferred from Sacramento County Jail and is "enroute" to a federal prison.  (Martin Reply (ECF No. 13) at 2 n.1.)

[2] Petitioner is a Romanian citizen who is lawfully in the United States.  However, due to his federal criminal case, BOP paperwork indicates that he has an active immigration detainer.  (Mot. TRO at 4.)

[3] The Court notes that the issues presented in this application are similar to those in the related case, *Kuzmenko v. Phillips et al.,* 2:25-cv-00663-DJC-AC.

1  jurisdiction to review discretionary decisions about individuals made by BOP, *see*

2  *Reeb v. Thomas,* 636 F.3d 1224, 1228 (9th Cir. 2011), the Ninth Circuit has

3  emphasized repeatedly that "courts have jurisdiction over habeas petitions alleging

4  'that BOP action is contrary to established federal law, violates the United States

5  Constitution, or exceeds its statutory authority.'" *Close v. Thomas,* 653 F.3d 970, 970–

6  74 (9th Cir. 2011) (citing *Reeb,* 636 F.3d at 1228).

7      Petitioner's claim is that the BOP violated the First Step Act by denying him

8  from applying his earned FSA Credits based on his unresolved immigration detainer.

9  (*See* Mot. TRO at 6–9.)   Respondents contend that the success of Petitioner's claim

10  does not change his duration in confinement and that his placement while serving his

11  term is squarely within the BOP's discretion.  (Martin Opp'n at 3–4.)  Respondents rely

12  on the Supreme Court's holding in *Sandin v. Conner,* 515 U.S. 472 (1995), to argue

13  that removing Petitioner from home confinement and returning him to prison does

14  not deprive him of any liberty interest because confinement in prison is not atypical of

15  what inmates endure as part of a custodial sentence.

16      However, *Sandin v. Conner* involved the difference in placing a prisoner in

17  disciplinary segregated confinement versus remaining in the general population.  *Id.*

18  at 486.  In making its determination, the Court explained that segregated confinement

19  did "not present a dramatic departure from the basic conditions of" the prisoner's

20  indeterminate sentence.  *Id.* at 485.  Rather, disciplinary segregation, with insignificant

21  exceptions, did not exceed similar, but discretionary, confinement in either duration

22  or degree of restriction.  *Id.* at 486.  The Court acknowledges that although

23  Petitioner's claim here may not ultimately change the length of his custody, success on

24  his argument would lead to his "earlier release from confinement."  Unlike the

25  differences in confinement outlined in *Sandin*, the difference between home

26  confinement and detention in a custodial setting is undoubtedly significant.

27      More relevant is the Supreme Court's decision in *Young v. Harper*, 520 U.S. 143

28  (1997).  In that case, the Court reviewed a habeas petition after the respondent was

4

1    placed on a preparole program and spent five months outside the penitentiary, but

2    was ultimately denied parole and sent back into custody without the procedural

3    protections outlined in *Morrissey v. Brewer,* 408 U.S. 471 (1972). *Harper,* 520 U.S. at

4    144–45. The Supreme Court found that preparole, as it existed at the time of

5    respondent's release, was sufficiently equivalent to parole so as to warrant similar due

6    process protections. *Id.* at 147. Importantly, the Court noted that although

7    respondent was not free from limitations of his personal liberty, he was released from

8    prison before the expiration of his sentence, kept his own residence, maintained a job,

9    and "relied on at least an implicit promise that [preparole] will be revoked only if he

10   fails to live up to the [preparole] conditions." *Id.* at 147–48. This Court finds it

11   significant that (1) the Supreme Court considered the habeas petition in a matter

12   where the ultimate duration of the custody appeared to remain the same, but success

13   on the claim could result in an earlier release from incarceration, and (2) that the

14   Supreme Court endorsed the view that preparole is "very different from that of

15   confinement in a prison." *Id.* at 147. Here, it is more likely that home confinement,

16   which grants Petitioner many of the freedoms outlined in *Young*, resembles a

17   preparole situation more so than one of an institutional setting. Thus, relief from

18   incarceration would constitute an immediate or earlier relief from confinement and

19   gives this Court subject matter jurisdiction.

20        To be sure, the Director of BOP is granted some discretion in how to effectuate

21   section 3632(d)(4)(C). For instance, he or she may require that prerelease custody be

22   served in a residential reentry center or in home confinement. That decision arguably

23   implicates section 3621, and in any event is not one that can be reviewed by this

24   Court. Similarly, as discussed below, the Director may decide whether to apply the

25   FSA credits to prerelease custody or supervised release, a discretionary decision that

26   may also not be reviewed by this Court. Many of the cases cited by Respondent in

27   support of his argument that the Court lacks jurisdiction involve these discretionary

28   decisions, which are distinguishable from this case. For example, the CARES Act

1    allowed the BOP Director to "lengthen the maximum amount of time for which the

2    Director is authorized to place a prisoner in home confinement, under the first

3    sentence of section 3624(c)(2) of title 18, United States Code, <u>as the Director deems</u>

4    <u>appropriate</u>."  CARES Act, Pub. L. No. 116-135, § 12003(b)(2) (2020) (emphasis

5    added).  Given the clear, discretionary language, courts have routinely concluded they

6    lacked jurisdiction to review home confinement eligibility under the CARES Act.  *See*

7    *Diaz-Lozano v. B.M. Trate,* No. 1:22-cv-01403 JLT SKO, 2022 WL 17417716, at *1 (E.D.

8    Cal. Dec. 5, 2022) (collecting cases) (listing cases finding federal habeas petitions

9    cannot be based on the CARES Act).

10           The Court recognizes that to some extent, the issue of subject matter

11   jurisdiction raises and falls with the interpretation of the FSA.  However, the core of

12   Petitioner's claim centers on the BOP exceeding its statutory authority as it pertains to

13   FSA credit application, rather than an individualized, discretionary decision.  Thus, the

14   Court finds that it has subject matter jurisdiction.  *See Martinez v. Gutierrez,* No. 4:22-

15   cv-00505 RM, 2023 WL 6466490, at *4 (D. Ariz. July 14, 2023), *report and*

16   *recommendation adopted,* 2023 WL 6464850 (D. Ariz. Oct. 4, 2023)(finding that

17   jurisdiction existed where petitioner challenged BOP policy as contrary to section

18   3632(d)); *Ramirez v. Phillips,* No. 2:23-cv-02911 KJM JDP, 2023 WL 8878993, at *2

19   (E.D. Cal. Dec. 22, 2023) (finding that petitioner's claim that BOP rescinded his FSA

20   credits in violation of federal law falls within the core of habeas corpus because

21   success would necessarily lead to a speedier release).

22       **III.    Exhaustion of Remedies**

23           A habeas petitioner must ordinarily exhaust available administrative remedies

24   before filing a petition under section 2241, and a petition may properly be dismissed

25   for failure to exhaust the administrative remedies made available by the BOP.  *See*

26   *Martinez v. Roberts,* 804 F.2d 570, 571 (9th Cir. 1986). However, courts have discretion

27   to waive the exhaustion requirement when administrative remedies are inadequate or

28   their exercise would be futile, or irreparable injury would result without immediate

1    judicial intervention.  *See Laing v. Ashcroft,* 370 F.3d 994,1000 (9th Cir. 2004).  A key

2    consideration in exercising this discretion is whether "relaxation of the requirement

3    would encourage deliberate bypass of the administrative scheme."  *Id.* at 1000

4    (citation and quotation omitted).

5         Respondent argues that administrative exhaustion is required because there is

6    no final order or record from BOP to review.  However, Respondents provide no

7    indication of what further information BOP would provide in such an order; indeed,

8    the facts appear undisputed, and BOP's reasoning.  Moreover, Petitioner argues that

9    administrative exhaustion would be futile because BOP's arrest was allegedly due to

10   its national policy and because a showing of irreparable harm exists here.  Because

11   the Court finds that irreparable harm exists here, the Court waives the exhaustion

12   requirement.

13       **IV.    Temporary Restraining Order**

14         **A. Legal Standard**

15       A temporary restraining order may be issued upon a showing "that immediate

16   and irreparable injury, loss, or damage will result to the movant before the adverse

17   party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  In determining whether

18   to issue a temporary restraining order, courts apply the factors that guide the

19   evaluation of a request for preliminary injunctive relief: (1) likelihood of success on the

20   merits; (2) irreparable harm in the absence of preliminary relief (3) the balance of

21   equities and (4) the public interest.  *See Winter v. Natural Res. Def. Council, Inc.,* 555

22   U.S. 7, 20 (2008); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832,

23   839 n.7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders

24   and preliminary injunctions is "substantially identical").

25       There is an even higher burden where the type of injunction sought is a

26   "mandatory injunction."  *See Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015)

27   (explaining that the plaintiff faced a "doubly demanding" burden for a mandatory

28   injunction).  To obtain a mandatory injunction, a plaintiff must show that "the law and

1  facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis

2  in original).  Because a mandatory injunction requires that a responsible party take an

3  action, they are "not granted unless extreme or very serious damage will result. . . ."

4  *Marlyn Nutraceuticals, Inc., v. Mucos Pharma GmbH & Co.,* 571 F.3d 878–79) (9th Cir.

5  2009).  The Court finds that this heightened burden is met in this case.

6      **B. Discussion**

7          **1. Likelihood of Success on the Merits**

8          The first *Winter* factor, the likelihood of success on the merits, "is a threshold

9  inquiry and is the most important factor."  *Baird v. Bonta,* 81 F.4th 1036, 1042 (9th Cir.

10  2023) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).

11  Petitioner argues that the BOP violated the FSA by denying him the ability to apply his

12  FSA Credits toward prerelease custody based on his unresolved immigration

13  detainer.  Specifically, Petitioner contends that the language of section 3632(d)(4)(C)

14  imposes a mandatory duty on the BOP to allow eligible prisoners to apply their FSA

15  Credits.  Respondent does not deny that Petitioner was reincarcerated because of the

16  immigration detainer, but disputes that section 3632(d)(4)(C) imposes any mandatory

17  duty.

18          The Court now turns to the text of section 3632(d)(4)(C), which reads:

19

20          Time credits earned under this paragraph by prisoners who
            successfully participate in recidivism reduction programs or
21          productive activities <u>shall</u> be applied toward time in prerelease
            custody or supervised release.  The Director of the Bureau
22          of Prisons <u>shall</u> transfer eligible prisoners, as determined under
            section 3624(g), into prerelease custody or supervised release.
23

24  18 U.S.C. § 3632(d)(4)(C) (emphasis added).  Other courts in the Ninth Circuit,

25  including a court in this District, have interpreted this language to mean that the BOP

26  does not have the discretion to exclude an eligible prisoner from having his earned

27  time credits applied under the FSA, because the FSA language in 18 U.S.C.

28

§ 3632(d)(4)(C) is mandatory. *Ramirez,* 2023 WL 8878993, at *4 (agreeing with other courts in finding that the language in section 3632(d)(4)(C) is mandatory); *see Jones v. Engleman,* No. 2:22-cv-05292 MGS GJS , 2022 WL 6563744, at *10 (C.D. Cal. Sept. 7, 2022), *report and recommendation adopted in part, rejected in part,* 2022 WL 6445565, at *1 (C.D. Cal. Oct. 7, 2022) (adopting in relevant part the statutory analysis in the findings and recommendations finding that section 3632(d)(4)(C) is mandatory); *see also Woodley v. Warden, USP Leavenworth,* No. 5:24-cv-03053 JWL, 2024 WL 2260904, at *3 (D. Kan. May 15, 2024) (stating that a plain reading of the section 3632(d)(4)(D) requires BOP to transfer a prisoner to prerelease custody or supervised release if the prisoner is "eligible" as pursuant to subsection 3624(g)). Under this reading, it appears to the Court that Petitioner had a right to apply his earned credits to a non-prison setting, although the form of custody (home confinement versus a residential reentry center) would be up to the BOP's discretion.

Respondents argue that even though the section uses the word "shall", section 3632(d)(4)(C) does not eliminate the BOP's discretion over the use of prerelease custody under section 3621(b). In making this claim, Respondents contend that section 3632(d)(4)(C) incorporates section 3624(g), titled "prerelease custody or supervised release for risk and needs assessment system participants", by reference. The Court does not disagree with this reading. Respondents further argue that section 3624(g)(10) in turn references a portion of section 3624(c) that discusses prerelease time limits and also a provision expressly incorporating and preserving BOP's discretion under section 3621(b). Respondent then argues that this provision regarding BOP's discretion also applies to section 3632(d)(4)(C). The Court finds that this argument is flawed.

Section 3624(g)(10) reads: "[t]he time limits under subsections (b) and (c) shall not apply to prerelease custody under this subsection." 18 U.S.C. § 3624(g)(10). Subsection (c), at issue here and which predates the FSA, limits prerelease custody to twelve months. Subsection (g)(10)'s exclusion of this time limit makes sense given that

1  subsection (c) would have otherwise created a conflict with the requirements of

2  section 3632(d)(4)(C) if eligible prisoners were constrained in the number of FSA

3  credits that could be applied toward prerelease custody or supervised release.  In

4  addition to providing how much time could otherwise be permitted in prerelease

5  custody, subsection 3624(c)(4) further provides that "[n]othing in this <u>subsection</u> shall

6  be construed to limit the authority of the Director of the Bureau of Prisons under

7  section 3621."  (Emphasis added.)  Respondent argues that this language also applies

8  to release under section 3632(d)(4).  Not so.  The fact that section 3624(g)(10) *limits*

9  application of subsection 3624(c) in no way suggests that a separate provision

10  contained in that section somehow applies to limit application of section 3632(d)(4).

11  Thus, the Court agrees with other district courts in this circuit that the language in

12  section 3632(d)(4)(C) is mandatory.

13      The Court now turns to Petitioner's unresolved immigration detainer as a basis

14  for denying his FSA credit application.  Respondents have not identified, and the

15  Court has not found, any place in the relevant sections where it states that individuals

16  with immigration detainers, are prohibited from applying their FSA credits for

17  prerelease.  *See Ramirez,* 2023 WL 8878993, at *4 (discussing that BOP likely

18  exceeded its statutory authority to the extent it cancelled petitioner's credits based on

19  a non-disqualifying conviction).  Indeed, Congress appears to have considered the

20  issue of whether and to what extent undocumented immigrants should be afforded

21  the opportunity to apply time credits and concluded that prisoners who are the

22  "subject of a final order of removal under any provision of the immigration laws" are

23  ineligible to do so.  *See* 18 U.S.C. § 3632(d)(4)(E)(i).  Petitioner has no such final order

24  of removal.  If Congress had intended for noncitizens who are subject to an

25  immigration detainer (but not a final order of removal) to be ineligible to apply

26  credits, it presumably would have said so.  Perhaps recognizing this, in 2023 the BOP

27  issued Change Notice 5410.01 which struck language from Program Statement

28  5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18

1   U.S.C. § 3632(d)(4), such that federal prisoners subject to immigration detainers were

2   no longer automatically prohibited from applying earned time credits.  *Alatorre v.*

3   *Derr,* No. 1:22-cv-00516 JMS WRP, 2023 WL 2599546, at *5 (D. Hawaii Mar. 22, 2023)

4   (explaining the changes made to Program Notice 5410.01 by Change Notice

5   5410.01).  While the BOP's program statements are not binding, *see Reeb,* 636 F.3d at

6   1227, it is nonetheless informative, and in any event is more consistent with the

7   statutory language.[4]

8          Respondents next argue that even if section 3632(d)(4)(C) is mandatory, that

9   does not mean that Petitioner is entitled to be released from prison.  The argument

10  appears to be that section 3632(d)(4)(C) authorizes the BOP to allocate the credits

11  toward prerelease custody or supervised release, which would allow BOP to shorten

12  the time on supervised release at the <u>end</u> of the term of supervised release.  (Martin

13  Opp'n at 15.)  In other words, instead of transferring Petitioner to prerelease custody

14  or supervised release <u>now</u>, BOP could shorten the period of supervised release such

15  that when he is ultimately released, he has less supervised release time.

16         As an initial matter, the Court agrees that the BOP has discretion to determine

17  how the earned credits are to be divided between prerelease custody and supervised

18  release.  *See* 18 U.S.C. § 3632(d)(4)(C).  However, to the extent that Respondents are

19  attempting to argue that they are able to <u>backend</u> the supervisory release credits such

20  that an eligible prisoner would be eligible for early release but would remain in BOP

21  custody, the Court finds this to be in violation of the second sentence of section

22  3632(d)(4)(C), which provides that the "Director of the Bureau of Prisons <u>shall transfer</u>

23  eligible prisoners, as determined under section 3624(g), into prerelease custody or

24  supervised release."  An interpretation that BOP may backend the supervisory release

25  ignores the command of section 3632(d)(4)(C) that the Director "transfer" eligible

26  prisoners, since in that situation the Director would not be transferring the prisoner

27

28

---

[4] Respondent has cited cases decided before this change, for instance *Hassan v. Hijar,* which the Court does not view as persuasive.  No. 3:23-cv-00041-KC, 2023 WL 1769207, at *3 (W.D. Tex. Feb. 3, 2023).

1  into either prerelease custody or supervised release.  18 U.S.C. § 3632(d)(4)(C).  Here,

2  Petitioner was already awarded 700 days of prerelease credits and 365 days of

3  supervisory release credits.  While BOP could have divided the time differently

4  between prerelease custody and supervised release, the Director was required to

5  transfer Petitioner into one of the two.

6      For the foregoing reasons, the Court finds that Petitioner has demonstrated a

7  likelihood of success on the merits.

8          **2.  Irreparable Harm**

9      A party seeking preliminary relief must also make a "clear showing" of a

10 likelihood of irreparable harm in the absence of the relief requested.  *Winter,* 555 U.S.

11 at 22; *see All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127,1131 (9th Cir. 2011) (". . .

12 plaintiffs must establish that irreparable harm is likely, not just possible, in order to

13 obtain a preliminary injunction.").

14     Petitioner argues that he is irreparably harmed every day he remains in custody

15 rather than serving the final portion of his sentence on prerelease custody.  The Court

16 agrees.  "Every day [Petitioner] is incarcerated rather than serving the final portion of

17 his sentence on prerelease custody or supervised release as mandated by the First

18 Step Act results in irreparable injury; petitioner cannot get back the time he spends

19 incarcerated."  *Ramirez,* 2023 WL 8878993, at *5.  Respondents contend that no

20 irreparable harm exists to Petitioner because the BOP prerelease programming is

21 discretionary.  However, for the reasons discussed above, the Court finds that in the

22 context of the FSA, prerelease custody or supervised release is mandatory where the

23 prisoner is eligible.  Thus, Petitioner has satisfied this requirement.

24          **3.  Balance of Equities and Public Interest**

25     The final two *Winter* factors merge when the government is the nonmoving

26 party.  *Baird*, 81 F.4th at 1040.  Here, the Respondents' harm is clearly minimal, as they

27 have no discretion to ignore the Congressional directive issued in section

28 3632(d)(4)(C).  On the other hand, the hardship to Petitioner is quite clear: he is

harmed every day he is improperly incarcerated rather than on prerelease custody. Further, the First Step Act was enacted by Congress to provide incarcerated individuals the opportunity to participate in programming that would allow for rehabilitation. *See* First Step Act of 2018, Pub. L. 115-391, Section 101. It is unclear to the Court how allowing for the discretionary removal of the incentives for following through with such programming benefits the public. Moreover, Petitioner had not violated any of the terms of his prerelease custody and was taking care of his serious medical issues. He will be able to continue to reintegrate with his community and continue his rehabilitation while in prerelease custody.

**V.    Conclusion**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Petitioner's Motion for Temporary Restraining Order (ECF No. 6) is GRANTED;

    A.    Respondents are ordered to transfer Mr. Dumitru Martin back into prerelease custody. Respondents are further restrained and enjoined from removing Petitioner from prerelease custody based on his immigration status.

    B.    This Temporary Restraining Order granted here shall expire on March 21, 2025, at 5:00 P.M., absent further order of this Court.

    C.    No bond shall be required under Federal Rule of Civil Procedure 65(c).

2.    The parties are directed to meet and confer as to whether any further evidence or briefing need be presented or whether the Court may adopt this order as a preliminary injunction pending a final adjudication on the merits. The parties shall file a joint response outlining their position(s) by March 11, 2025. If either party requests further briefing on whether a preliminary injunction should be entered, the parties shall propose a

schedule for Petitioner to file a motion for preliminary injunction and for
briefing on said motion.

        IT IS SO ORDERED.

Dated:    **March 7, 2025**

_Daniel J. Calabretta_
Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – MARTIN25Ccv00687.tro

14